## A94A1790. BUTTS et al. v. SOUTHERN CLAYS, INC.
### (450 SE2d 244)

BLACKBURN, Judge.

This is an appeal from the trial court's grant of defendant Southern Clays, Inc.'s ("Southern") motion for summary judgment. In their underlying complaint filed on February 13, 1986, the plaintiffs allege that in 1959, Southern fraudulently purchased 580 acres of land from them for a mere fraction of its fair market value. Specifically, plaintiffs claim that Southern failed to disclose material information with regard to the quantity, quality, and value of the kaolin reserves on the land. By way of this omission, plaintiffs claim that Southern defrauded them and that the fraud continued until it was discovered in 1986. Plaintiffs sought actual and punitive damages, attorney fees, and costs.

In 1933, Southern obtained a mineral lease on the land in question for an unspecified time period. In 1939, Southern obtained a 99-year mineral lease on the land which required Southern to pay a minimum annual royalty, and if Southern chose to mine the property, mining royalties. The plaintiffs claim that the 1939 mineral lease could have been voided or rescinded for fraud as Southern had fraudulently reduced the amount of mining royalties provided for in the 1933 lease. The 1933 lease provided for a royalty of "Ten Cents . . . per ton of twenty-two hundred and forty (2240) pounds, railroad weights." The 1939 lease provided for a royalty of "Ten Cents . . . per ton of twenty-two hundred and forty (2240) pounds *refined clay*, railroad weights." In *Smith v. Freeport Kaolin Co.*, 687 FSupp. 1550, 1553 (M.D. Ga. 1988), the court recognized that 1.5 tons of dry crude kaolin is required to produce one ton of refined clay.

However, plaintiffs' claim for fraud with regard to the 1939 lease is without merit as it is undisputed that they signed the lease, and they do not claim that they were prevented from reading it. "Where one who can read signs a contract without apprising himself of its contents . . . he can not defend an action based on it, or have it canceled or reformed, on the ground that it does not contain the contract actually made, unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpetrated by the opposite party, amounting to actual fraud as would reasonably prevent him from reading it." (Citation and punctuation omitted.) *Hall v. World Omni Leasing*, 209 Ga. App. 115, 117 (433 SE2d 297) (1993). The parties who negotiated both leases are no longer alive. Therefore, pursuant to Georgia's Dead Man's Statute, any testimony regarding the lease negotiations is inad-

missible. See Former Code Ann. § 38-1603.[1]

On February 8, 1957, Mack Tucker[2] wrote to Southern and complained about the kaolin lease and requested that Southern purchase the property. Tucker wrote: "Since the cost of living index has gone up so greatly in years since 1933, we don't feel that the $1,000 per year rental or the $.10 per ton royalty is even near the value of our clay. . . . I saw an index recently which showed that if $.10 per ton was a fair price in 1933 it should be at least $.20 per ton today. I am in the investment business, and I would like a lump sum to invest in one of our mutual funds. I think that all concerned would be pleased if your company would buy the clay that you know is there from your recent prospecting, and pay according to the present prevailing price." On September 3, 1959, Southern purchased the property for $103,000. Southern also agreed to let plaintiffs' mother live the remainder of her life on the property and allowed plaintiffs to remove the dwelling from the land after she died. Southern further allowed plaintiffs to keep a stream of income from the land with respect to timber grown on the land.

Plaintiffs have admitted, that in selling to Southern they were not expecting or relying on Southern to make any statement or disclosure as to what Southern believed to be the value of the property. Plaintiffs' testimony also indicates that, at the time of the sale, they did not believe they had received a fair price for their land, and that they thought their land was worth more than the selling price of $103,000. Plaintiffs' testimony also makes it very clear that they were well aware that Southern was withholding information about the true value of the kaolin reserves.

OCGA § 23-2-53 provides that "[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." In *McLendon v. Ga. Kaolin Co.*, 782 FSupp. 1548 (M.D. Ga.

---

[1] Former Code Ann. § 38-1603 (3) provided: "Where any suit shall be instituted or defended by a corporation, the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer or agent of the corporation; nor shall an officer or agent of a corporation be admitted to testify to transactions or communications with an opposite party who is insane at the time of trial; nor shall such officer or agent be admitted to testify, against an opposite party who is the personal representative of a deceased person, as to transactions or communications with such deceased person."

OCGA § 24-9-1 abolished the Dead Man's Statute for transactions occurring on or after July 1, 1979, but provided for its continued applicability with respect to transactions occurring prior to that date. OCGA § 24-9-1 (b).

[2] The property was owned prior to the sale to Southern by four family members: three sisters and their brother, plaintiffs Marie T. Butts (now deceased), Elizabeth T. Hooks, Corinne T. Dykes and Mack R. Tucker (now deceased).

1992), plaintiffs conveyed their land to a Kaolin company in 1969. Plaintiffs had no knowledge of the existence of kaolin on their property, and the options to buy the property were in the name of an individual, rather than the name of the kaolin company. Under those facts, the United States District Court for the Middle District of Georgia determined that as to all but one plaintiff, the jury could find that the kaolin company had "a duty to disclose an intrinsic quality of the property not easily discoverable." Id. at 1565. However, with regard to the plaintiff who knew the kaolin company was the ultimate purchaser, who knew the kaolin company had conducted drilling on the property, who had leased mineral rights to the kaolin company, and who lived on the property during the drilling, the court determined that the particular circumstances did not create a duty of disclosure. Id.

In the present case, plaintiffs argue that the kaolin reserves constituted a latent or hidden characteristic of the land not subject to visual observation. However, this case is not controlled by precedent regarding latent defects or hidden issues unknown to plaintiffs. In those cases, the plaintiffs had no knowledge of the latent characteristic, see *Miller v. Clabby*, 178 Ga. App. 821 (344 SE2d 751) (1986); however, plaintiffs herein were aware of the existence of substantial kaolin reserves. Plaintiffs even knew that the largest strata of clay was located under the family home. Plaintiffs also were aware that Southern had more information regarding the kaolin reserves than they possessed.

The plaintiffs assert that the quantity, quality, and commercial value of the kaolin were discoverable only through drilling and testing the cores of kaolin. Plaintiffs contend that this information was readily available to Southern; however, such information was not available to the plaintiffs who had no expertise or equipment in order to establish this value. Plaintiffs admit they were aware of the kaolin reserves and did not seek to have the property tested by any independent company. Furthermore, plaintiffs did not inquire of Southern as to the value of the kaolin reserves, and there is nothing in the record which indicates that Southern misrepresented such facts to plaintiffs. Although the president of Southern testified that he was unaware of any other company who could have done the testing, at that time, the record, as well as common knowledge, indicates that other kaolin companies existed in 1959. See *Brooks v. Freeport Kaolin Co.*, 253 Ga. 678 (324 SE2d 170) (1985) (Freeport Kaolin Company operated in Georgia); *McLendon*, supra (Georgia Kaolin Company operated in Georgia).

Under the facts of this case, plaintiffs are unable to meet their burden of establishing that Southern had a duty to disclose *any* information with regard to the kaolin reserves on plaintiffs' property ab-

sent an inquiry by plaintiffs. This is not a case where the plaintiffs did not know that their land contained kaolin prior to the sale. Plaintiffs knowingly sold their land for its kaolin content to a company that they knew was in a position to have superior knowledge regarding the quantity and quality of the reserves. Plaintiffs requested that Southern purchase the land for its kaolin content; however, Southern already owned the rights to the kaolin pursuant to the 1939 lease. Therefore, Southern had the right to mine the kaolin whether or not they purchased the land. Indeed, the sellers (one of whom was in the investment business), obtained a large sum of money to invest in mutual funds.

A buyer-seller relationship existed between Southern and plaintiffs, not a confidential relationship. Absent facts not herein existing, a buyer-seller relationship does not require that the buyer disclose information regarding the value of the seller's property. "The vendor and vendee of property are not, by virtue of such fact, placed in a confidential relationship to each other, but on the contrary are presumed to be dealing at arm's length." (Citation and punctuation omitted.) *Mabry v. Pelton*, 208 Ga. App. 891, 892 (432 SE2d 588) (1993). Therefore, Southern was under no duty to disclose, absent agreement, the results of its testing of the kaolin reserves, and the trial court did not err in granting Southern's motion for summary judgment.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 21, 1994 —
RECONSIDERATION DENIED NOVEMBER 2, 1994 —

*Foy R. Devine, Franklin R. Nix*, for appellants.
*King & Spalding, Richard A. Schneider, Frank C. Jones, Ralph A. Pitts, Nicole Caucci*, for appellee.

