Gordon S. GARBUTT, Jr.,
et al., Plaintiffs,

v.

SOUTHERN CLAYS, INC.,
et al., Defendants.

No. 5:93–cv–433–1 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 4, 1995.

Benjamin M. Garland, Macon, GA, for plaintiffs Gordon S. Garbutt, Jr., Frank L.

Garbutt, Mary Garbutt Mercer, Margaret Garbutt, Executrix of the Estate of Reese T. Garbutt, Deceased.

Richard Anthony Schneider, Atlanta, GA, for defendant Southern Clays, Inc., Rhode Island Charities Trust.

## ORDER

OWENS, District Judge.

Before the court is defendant's motion for summary judgment. After careful consideration of the arguments of counsel, the relevant caselaw, and the record as a whole, the court issues the following order.

## I. INTRODUCTION

 Even though the law of the forum state governs the substantive aspects of this diversity case, "federal law controls the procedural aspects." *Hammer v. Slater,* 20 F.3d 1137, 1140 (11th Cir.1994). Thus, the movant is entitled to summary judgment if the pleadings, depositions, and affidavits show (1) there is no genuine issue as to any material fact, and (2) the movant is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). The court examines substantive law involved to determine which facts are material. *Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 590 (11th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994).

## II. FACTS[1]

 Defendant[2] was a corporation engaged in the business of prospecting for and

---

1. Only defendant has filed the requisite statement of facts. Accordingly, "[a]ll material facts set forth in the statement served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Local Rule 3.7.

To the extent that portions of plaintiffs' response brief might be read as the equivalent of the required factual statement, the court finds them unpersuasive. Plaintiffs' response brief begins with a statement, set out in block quotation form, by plaintiff's attorney of "what the evidence conclusively shows". Plaintiffs cannot oppose defendants' supported summary judgment motion with statements such as this. Only competent and admissible evidence can be used to

overcome a motion for summary judgment. *McLendon v. Georgia Kaolin Co., Inc.,* 837 F.Supp. 1231 (M.D.Ga.1993); *McLendon v. Georgia Kaolin Co., Inc.,* 782 F.Supp. 1548 (M.D.Ga. 1992).

Finally, the court finds any questions of fact raised by plaintiffs' response immaterial in light of the theories asserted by defendant. *Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 590 (11th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994) (court examines substantive law involved to determine which facts are material).

2. For the history of defendant Southern Clays, Inc., *see Gordon S. Garbutt, Jr. v. Southern Clays,*

mining kaolin, a chalky white substance for which the number of applications daily increases. Plaintiffs—Annie Julia Garbutt (now deceased), Gordon S. Garbutt, Jr., Frank J. Garbutt, Mary Garbutt Mercer, and Reese Tucker Garbutt (now deceased)—owned land in middle Georgia that was a likely spot for kaolin deposits.

True to its nature as a kaolin company, defendant purchased from plaintiffs a 575–acre tract of land in Washington County, Georgia in 1957. Plaintiffs knew at the time that defendant was a kaolin company, and that defendant had prospected the property with kaolin in mind. The purchase price paid was around $88,000, plus other considerations, such as allowing plaintiffs' parents to reside on the property for the remainder of their lives, and to then remove the dwelling after their deaths. Gordon Garbutt, Jr., however, admitted to thinking prior to the sale that the property was worth more.

Prior to this purchase, defendant had been a lessee of plaintiffs. In 1939 plaintiffs and others with an interest in the property leased the property to defendant for ninety-nine (99) years under the following terms: defendant would make an annual payment of $1000 to plaintiffs; defendant possessed an option to purchase the land at any time during the term of the lease for $70 per acre plus 7% interest, less the amount of rental payments and royalties paid up to that time; defendant could mine the land if it chose; if defendant took any kaolin from the ground, it would pay a royalty of ten (10) cents per refined ton; and defendant could prospect the land for kaolin deposits.

However, plaintiffs realized that the option to purchase was structured in such a way that for each successive year that they held on to the land, the less the ultimate purchase price would be. Defendant was essentially paying $1,000 each year towards the purchase of the land when it made its rental payment, since that amount would be deducted from whatever the ultimate purchase price was. Realizing this, *plaintiffs desired to sell* the property to defendant.

Defendant's representative, Mr. Scott (deceased prior to this case), negotiated with Mr. and Mrs. Garbutt, Sr. (both of whom also died prior to this case) for the sale of the property. Plaintiff Gordon Garbutt, Jr. was allowed to sit in on at least one of their meetings, but generally remembers nothing of substance.

Plaintiffs had the impression in 1957 that defendant had prospected the land for kaolin, knew how much of the mineral the land possessed, and would not disclose that information during negotiations. However, plaintiffs did absolutely nothing to discover on their own behalf how much kaolin the property might contain. They did not inquire of neighboring landowners who had sold property to the kaolin companies the price for which they sold; they did not contact other kaolin companies that might be interested in purchasing the property to establish a competitive bid; they did not investigate in courthouse records the purchase price of other properties thought to contain kaolin; they did not contact any government official or agency for assistance or advice of any sort; and, finally, they did not even contact neighboring family members who had entered similar negotiations for the sale of their property, despite the fact that they were close and one of them was apparently knowledgeable concerning these matters, *see* G. Garbutt, exh. 4. Nor did plaintiffs ask defendant how much kaolin was on the property, notwithstanding their belief at the time that defendant possessed this information. Consistent with plaintiffs' failure to ask defendant for this information, defendant never offered it nor made any representation upon which plaintiffs might have relied.

### III. DISCUSSION

In their response brief, plaintiffs argue that there is sufficient evidence for this case

---

*Inc.,* 844 F.Supp. 1551, 1551 (M.D.Ga.1994) (finding that diversity jurisdiction existed notwithstanding that foreign corporate defendant

was the successor to the defunct Southern Clays, which had been a domestic corporation).

to proceed to the jury on claims of fraud and unconscionability. Plaintiffs describe three disputes that they claim mandate denial of summary judgment. First, plaintiffs argue that the 1939 lease was voidable because of fraud, *viz.*, defendant allegedly altered, without plaintiffs' knowledge, the basis for royalty payments from the prior, 1933 lease. Second, the option to purchase contained in the lease was voidable because of the Rule Against Perpetuities, and this fact, too, was unknown to plaintiffs. Defendant allegedly used its knowledge, and plaintiffs' corresponding lack of knowledge, of the option's purported voidability when negotiating for the purchase of the property. Finally, plaintiffs contend that defendant's superior knowledge, and superior ability to gain access to knowledge about the property's kaolin deposits, imposed upon it a duty to communicate this to plaintiffs.

Defendant responds as follows: (1) defendant had no duty to disclose; (2) plaintiffs cannot prove the reliance element of their fraud claims; (3) the statute of limitations has run on fraud claims, and was not tolled on account of fraud; (4) application of Georgia's Dead Man Statute to the transaction at issue bars any testimony regarding the transaction, thereby rendering impossible plaintiff's proof of either type of claim; (5) plaintiffs cannot prove the value of the property was worth more than was paid for it in 1957; and (6) plaintiffs did not in any event suffer damage, since the binding 1939 lease would have allowed defendants to purchase the land for less than was actually paid.

For the reasons that follow, the court is persuaded by defendants' arguments, and finds that summary judgment should be

GRANTED to defendants. The court discusses each type of plaintiffs' claims in turn.

## A. Fraud Claims

In counts I, II, IV, and V, plaintiffs allege one form of fraud or another—actual or constructive fraud; suppression of a material fact as fraud under O.C.G.A. § 23-2-53; and inadequacy of consideration as evidence of fraud under O.C.G.A. § 13-3-46.[3] Before proceeding to a consideration of each of the several manifestations of plaintiffs' fraud claims, the court should address an important evidentiary issue. Only competent and admissible evidence can successfully oppose a motion for summary judgment. *McLendon v. Georgia Kaolin Co., Inc.*, 782 F.Supp. 1548, 1557 (M.D.Ga.1992). Competency of witnesses to testify in this case, where state law provides the rule of decision as to an element of a claim or defense, is controlled by state law. FED.R.EVID. 601. The Georgia Dead Man's Statute, § 38-1603(3),[4] thus controls.

> Where any suit shall be instituted or defended by a corporation, the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer or agent of the corporation; nor shall an officer or agent of the corporation ... be admitted to testify against an opposite party who is the personal representative of a deceased person, as to transactions or communications with such deceased person.

The only agent defendants used in negotiating the 1957 purchase was John Scott, now deceased.[5] Therefore, the Dead Man's Statute precludes testimony from any plaintiff concerning dealings with Scott. *Butts v. Southern Clays*, 215 Ga.App. 110, 110-11, 450 S.E.2d 244 (1994); *McLendon v. Georgia*

---

**3.** The court notes that plaintiffs cited O.C.G.A. § 13-2-6, a nonexistent code section, for their claim that great inadequacy of consideration suggested fraud. Upon inspection, the proper code section is that used by the court.

**4.** Repealed by O.C.G.A. § 24-9-1 in 1979, the Dead Man's Statute lives on as a rule of evidence in Georgia with respect to transactions occurring prior to July 1, 1979. *Butts v. Southern Clays*,

215 Ga.App. 110, 111 n. 1, 450 S.E.2d 244 (1994) (citing O.C.G.A. § 24-9-1(b)).

**5.** Gordon Garbutt, Jr. deposed that he was unaware of any other representatives of defendant with whom his parents might have negotiated, but that to the extent of his knowledge, Mr. Scott was the only such representative. G. Garbutt, at 30. Plaintiffs fail to address this in their brief. *See* Local Rule 3.7.

*Kaolin Co., Inc.,* 782 F.Supp. 1548, 1558–59 (M.D.Ga.1992). Once defendants have carried their initial burden on summary judgment, plaintiffs must find another source of evidence to carry their burden of rebuttal.

### 1. Actual or Constructive Fraud

■ Pursuant to O.C.G.A. § 23–2–51, fraud may be actual or constructive. *See also* 37 AM.JUR.2D *Fraud and Deceit* § 4 (1968) (comparison of actual and constructive fraud). The prima facie elements of actual fraud are: "(1) a false representation by defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from action; (4) justifiable reliance by the plaintiff; and (5) damages." *Smith v. McClung,* 215 Ga.App. 786, 452 S.E.2d 229, 230 (1994) (citations and internal quotations omitted). The first element,

> misrepresentation of a material fact, can be demonstrated by either showing that a material fact was, in fact, misrepresented, or that a material fact was concealed by defendants. In this latter situation, however, plaintiff must further allege that a fiduciary or confidential relationship existed such that defendants had a duty to disclose the material fact in question.

*Hubbard v. Stewart,* 651 F.Supp. 294, 298 (M.D.Ga.1987).

■ Constructive fraud exists where defendant acted, or failed to act, " 'contrary to *legal or equitable duty, trust, or confidence justly reposed,* which is contrary to good conscience and operates to the injury of another.' " *Macon–Bibb County Hosp. Auth. v. Georgia Kaolin Co.,* 646 F.Supp. 90, 93 (M.D.Ga.1986), *aff'd,* 817 F.2d 98 (11th Cir. 1987) (per curiam) (quoting O.C.G.A. § 23–2–51(b)). *See also Eason Publications, Inc. v. Nationsbank of Georgia,* 217 Ga.App. 726, 458 S.E.2d 899, 903 (Ga.App.1995). Constructive fraud is thus similar to a claim of actual fraud that alleges nondisclosure of a material fact: in both instances the plaintiff must prove the existence of a confidential relationship. However, the essential difference between actual (whether through positive misrepresentation or nondisclosure of a material fact) and constructive fraud is the intent element. In the former, plaintiff must

prove intent to succeed; in the latter there is the presumption of fraud, without the showing of intent, because of the relation between the parties. 37 AM.JUR.2D *Fraud and Deceit* § 4 (1968) (constructive fraud "is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place . . . [and] requires neither actual dishonesty nor intent to deceive").

■ Those of plaintiffs' claims alleging actual fraud fail as a matter of law. And this is so whether the allegation is that defendant defrauded plaintiffs through misrepresentation or nondisclosure. Assume that it is the former. In that event, plaintiffs would have to prove that defendant misrepresented a material fact, upon which plaintiffs relied. O.C.G.A. § 23–2–52 (misrepresentation). Gordon Garbutt, Jr. deposed that no one from defendant ever represented to him the value of the property, and that he was not expecting defendant to tell him the value. And despite the fact that he believed defendant to have an estimate of the amount of clay on the land in 1957, Gordon Garbutt, Jr. admitted that defendant never shared such information with him. No representations occurred. In any event, plaintiffs' contention appears to be that defendant failed to disclose a material fact.

■ If the allegation is nondisclosure of a material fact, then plaintiffs would have to prove the existence of a confidential relationship. Because this element is common to both actual fraud predicated upon nondisclosure and constructive fraud, the court will treat those claims simultaneously. Plaintiffs and defendant were in the position of vendor and vendee. Under Georgia law,

> a buyer-seller relationship does not require that the buyer disclose information regarding the value of the seller's property. "The vendor and vendee of property are not, by virtue of such fact, placed in a confidential relationship to each other, but on the contrary are presumed to be dealing at arm's length."

*Butts v. Southern Clays, Inc.,* 215 Ga.App. 110, 450 S.E.2d 244, 247 (1994) (quoting *Mabry v. Pelton,* 208 Ga.App. 891, 892, 432 S.E.2d 588 (1993)). Like the plaintiffs in

*Butts,* plaintiffs here knew their land contained valuable kaolin prior to the sale; they also knew that defendant sought to purchase the land for its kaolin content, and had "superior knowledge regarding the quantity and quality of the reserves." And further like the situation in *Butts,* "Southern already owned the rights to the kaolin pursuant to the 1939 lease."[6] Defendant had no duty to disclose. Plaintiffs' fraud claims, the existence of which are dependent upon such a duty, must therefore fail.

■ Yet another cause for the failure of plaintiffs' actual fraud claims is the reason that they cannot establish the element of reliance. Gordon Garbutt, Jr. specifically stated that he was not relying upon them in contemplating the transaction. And that is the only evidence before the court on the issue of reliance. Defendants have more than carried their burden on summary judgment; because plaintiffs have not adduced any evidence tending to demonstrate reliance, summary judgment is appropriate against them. *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994); *Martin v. Commercial Union Ins. Co.,* 935 F.2d 235, 238 (11th Cir.1991) (nonmovant "must present specific facts in support of its position and cannot rest upon allegations or denials in the pleadings"). Plaintiffs merely conclude that they "were excused from exercising any diligence as a matter of law." The court is not willing to do that.

### 2. Suppression of Material Fact

■ Under O.C.G.A. § 23–2–53, fraud will exist where a party, *under an obligation to communicate such information,* suppresses a material fact. The obligation to communicate may arise from a confidential relationship between the parties or the particular circumstances of the individual case. In light of the foregoing, the court finds that no confidential relationship existed, and that the particular circumstances were not such as to impose the obligation referred to in O.C.G.A. § 23–2–53. *Butts v. Southern Clays, Inc., supra.*

### 3. Inadequacy of Consideration as Evidence of Fraud

■ Plaintiffs also allege that the inadequacy of consideration paid is strong evidence of fraud. Assuming, *arguendo,* that the consideration paid was inadequate, the fact still remains that plaintiffs have been unable to establish other prima facie elements of their fraud claim, *viz.,* absence of any representations, any reliance by plaintiffs, and any duty to disclose. The court refuses to undo that which the plaintiffs willingly consummated with "open eyes." Still assuming that the consideration paid was inadequate, the court elects to view it not as evidence of fraud, but rather as evidence that defendants simply got a good deal—and the law does not prohibit persons from getting a good deal.

In conclusion on the fraud claims, the court finds that the Georgia Court of Appeals' decision in *Butts v. Southern Clays, Inc.,* 215 Ga.App. 110, 450 S.E.2d 244 (1994),[7] is dis-

---

**6.** Plaintiffs forcefully contend that one manifestation of defendant's fraud is seen in their renegotiation of the lease in 1939. Plaintiffs claim that prior to that time, a 1933 agreement between the parties was a mere tenancy at will. Plaintiffs accuse defendants of fraudulently inducing plaintiffs into entering the 1939 lease to replace the 1933 agreement. Plaintiffs also claim the 1939 lease to be unenforceable because of problems with the Rule Against Perpetuities. Plaintiffs claim that the fact of the 1939 lease's invalidity, known to defendants but kept by them from plaintiffs, would have been material in negotiations of the 1957 sale—had plaintiffs known the lease was invalid, they would not have been as willing to sell.

Plaintiffs claim that the invalidity *vel non* of the 1939 lease is before this court. Defendants claim the issue was handled by the court in

*Butts.* Having reviewed plaintiffs' brief on appeal in the state court, and the resulting opinion, the court finds itself bound by the precedent in *Butts.* The *Butts* plaintiffs made their arguments concerning the invalidity of the nearly (if not precisely) identical 1939 lease to the court of appeals, *see* Defendant's Reply, exh. A, at 4, but were rejected. *Butts,* 450 S.E.2d at 247 ("Southern already owned the rights to the kaolin pursuant to the 1939 lease[;] Southern had the right to mine the kaolin whether or not they purchased the land.").

**7.** Plaintiffs have not attempted to distinguish *Butts* with respect to the fraud claims. The only reference to *Butts* is in regard to the unconscionability claim, and then only to state that *Butts* did not deal with unconscionability issues. The court expressly admonished plaintiffs in its order

positive of fraud claims. In their brief, plaintiffs seek to distinguish *Butts* on the basis that it "never addresse[d] the issue of unconscionability and, therefore, is not controlling in this case." Plaintiffs do not make a similar attempt to distinguish *Butts* in regard to fraud claims. *Butts* is obviously controlling here, and the court must GRANT DEFENDANTS' SUMMARY JUDGMENT MOTION as to all fraud claims.

### B. Unconscionability [8]

In support of their unconscionability claims, plaintiffs initially cite O.C.G.A. § 11–2–302. Technically, reliance on this code section in this case is entirely misplaced. Pursuant to O.C.G.A. § 11–2–102, the scope of Article 2 is limited to "transactions in goods." "Goods" can include "identified things attached to realty." O.C.G.A. § 11–2–105(1). However, a contract for the sale of minerals to be removed from realty is only a "sale of goods within this article if they are to be severed *by the seller.*" O.C.G.A. § 11–2–107(1) (emphasis supplied).

■ Plaintiffs' claim of unconscionability based upon Article 2 thus fails at two levels. First, the contract at issue here was for the sale of realty, nothing more and nothing less. There was no sale of "goods". Second, even if the 1957 contract was considered to be for the sale of minerals thereon, severance was to be by the buyer, not the seller. Accordingly, Article 2 of the Uniform Commercial Code has no application here, and neither do individual provisions such as § 11–2–302.

■ However, the common law in Georgia contains an unconscionability rule separate from that contained in Article 2. *F.N. Roberts Pest Control Co. v. McDonald,* 132 Ga.App. 257, 208 S.E.2d 13, 15 (1974) (citing *Hall v. Wingate,* 159 Ga. 630, 666, 126 S.E. 796 (1924)). Georgia courts have failed to draw the UCC/common law distinction in some cases, treating unconscionability the same whether it has Article 2 or the common law as its source. *See, e.g., Hall v. Fruehauf Corp.,* 179 Ga.App. 362, 346 S.E.2d 582 (1986)

(citing Article 2 unconscionability provision, notwithstanding suit was on a repair contract not within scope of Article 2). *But compare Zepp v. Mayor & Council of Athens,* 180 Ga.App. 72, 348 S.E.2d 673 (1986) (conducting Article 2 scope analysis before proceeding to unconscionability issue). In any event, the court does not perceive in Georgia law a noticeable difference in the standards and procedures for unconscionability in and out of the Article 2 context.

As an initial matter, "unconscionability is a question of law for the court." *Zepp v. Mayor & Council of Athens,* 180 Ga.App. 72, 348 S.E.2d 673 (1986). It should be decided "in the light of the background and commercial setting of the contractual provision." *R.C. Craig, Ltd. v. Ships of the Sea, Inc.,* 345 F.Supp. 1066, 1074 (S.D.Ga.1972).

■ In Georgia, an unconscionable contract is "such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of." *R.L. Kimsey Cotton Co., Inc. v. Ferguson,* 233 Ga. 962, 966, 214 S.E.2d 360 (1975); *Hall v. Fruehauf Corp.,* 179 Ga.App. 362, 346 S.E.2d 582 (1986); *Stefan Jewelers v. Electro–Protective Corp.,* 161 Ga.App. 385, 288 S.E.2d 667 (1982). It is a contract that is "abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another." *F.N. Roberts Pest Control Co. v. McDonald,* 132 Ga. App. 257, 260, 208 S.E.2d 13 (1974) (emphasis deleted). Because unconscionability is directly related to fraud and deceit, it "may be found where there is great inadequacy of consideration or great disparity of mental ability." *Id.*

■ In the court's considered judgment, the transaction at issue was not in the least unconscionable. Plaintiffs knew defendant-purchaser was a kaolin company; that defendant had prospected the property for kaolin deposits; and that they could not rely on defendant to provide them with information. Despite all of this, plaintiffs took no action to

---

of June 14, 1995 that *Butts* governed liability in this action.

8. The court notes that its evidentiary ruling based on Georgia's Dead Man's Statute, *see* part III.A., *supra,* is equally applicable to unconscionability claims.

discover for themselves the amount of kaolin on the property. The only factor influencing plaintiffs to sell was the fact that they did not relish the prospect of the ultimate option price being diminished by the annual rental payment. Defendant had no control over this, except to the extent they were a party to the lease that included this term. And there is no evidence that any one, or any thing, forced plaintiffs to sign the 1939 lease agreement.

> Parties who are sui juris are free to contract upon such terms as they may choose, so long as they do not run afoul of public policy or the prohibitions of some statute. The courts are not authorized to declare a contract void merely because it may be unwise or even foolish. Folly is not in all cases fraud. That it may be unwise or disadvantageous or place a hardship on one party furnishes no reason for not enforcing the contract as made.

*Bright v. Stubbs Properties, Inc.*, 133 Ga. App. 166, 167, 210 S.E.2d 379 (1974) (citations and internal quotation marks omitted). It may certainly be folly for one to sell something without first making an effort to ascertain the nature of what it is he possesses; under these circumstances, such folly does not amount to fraud, or unconscionability.

## IV. CONCLUSION

Plaintiffs' claims are based upon either fraud or unconscionability. The court **GRANTS SUMMARY JUDGMENT TO DEFENDANT** on all fraud claims, whether based upon nondisclosure, misrepresentation, or suppression. The Georgia Court of Appeals' opinion in *Butts v. Southern Clays* is dispositive of those issues. *Butts* makes clear that defendant owed plaintiffs no duty of disclosure, and that it is nearly impossible for plaintiffs to prove occurrences fifty years in the past when the Dead Man's Statute applies. The court similarly **GRANTS SUMMARY JUDGMENT TO DEFENDANT** on those claims predicated upon unconscionability. Evidence of undue influence, fraud, unequal bargaining strength, or disparity of mental ability is simply nonexistent. However, evidence that plaintiffs took no action to further their own interests, despite their recognition of the fact that defendant probably knew something they did not, is abundant.

Let summary judgment be **GRANTED** to defendants on all claims.

**SO ORDERED.**