**Beverly M. MANNING, et al., Plaintiffs,**

v.

**ENGELHARD CORP., Defendant.**

5:90–cv–331–1(WDO).

United States District Court,
M.D. Georgia,
Macon Division.

June 26, 1996.

---

Gordon Lee Dickens, Jr., Dickens & Burns, Milledgeville, GA, for Plaintiffs.

H. Jerome Strickland, Hubert Chapman Lovein, Jr., Timothy Harden, III, Jones, Cork & Miller, Macon, GA, for Defendant.

## ORDER

OWENS, District Judge.

Before the court is defendant's motion for summary judgment. After the normal briefing schedule had been completed, the court asked the parties to submit proposed findings of fact and conclusions of law outlining their respective positions. The court then held oral argument based on the contentions raised in those submissions. Having carefully considered all of the foregoing, the relevant caselaw, and the record as a whole, the court issues the following order.

## I. UNDISPUTED FACTS

This case involves two mining leases. On October 11, 1960, E. Pierce Wood and defendant entered a lease, pursuant to which defendant was obligated to pay

a royalty of Forty (40¢) cents for each cubic yard of crude kaolin mined and removed from said premises for processing and sale. The number of cubic yards on which royalties are payable shall be determined from cross section surveys of each pit taken at fifty (50) foot intervals and made by an independent surveyor as of January 1 and July 1 of each year (provided that no such survey will be required unless some materials for which royalties are payable was mined from the pit during the preceding six (6) months). The cost of such surveys shall be paid by [defendant]. Owner shall have the right at any reasonable time during working hours to enter upon the premises and inspect the workings thereon for the purpose of verifying compliance with the terms hereof. Such earned royalties shall be applied first to reimburse [defendant] for the advance payments that have been made as provided in Paragraph 5, and the balance, if any, paid to Owner monthly, beginning on the first of the second month after mining is begun, it being provided that monthly payments be made on the basis of quantities estimated by [defendant] with a proper calculation and settlement each month.

Defendant's SJM, exh. A ("E.P. Wood Lease"). Plaintiffs are the successors in interest to E. Pierce Wood under this lease.

Under the second of these leases ("Norwood") entered on May 24, 1972, defendant agreed to pay plaintiffs

a royalty of seventy cents (70¢) for each cubic yard of crude kaolin mined and removed from said premises for processing and sale. The amount of kaolin or other minerals mined shall be determined by using average weights or average measurements, using methods to be determined by [defendant], appropriate to the method of mining being used. Such royal-

ties shall be applied first to reimburse [defendant] for the advance payments that have been made as provided in Paragraph 5, and the balance, if any, paid to [plaintiff] monthly, beginning on the first of the second month after mining is begun, it being provided that monthly payments be made on the basis of quantities estimated by [defendant] with a proper calculation and settlement each six months.

Defendant's SJM, exh. C.

The E.P. Wood and Norwood parcels were mined for kaolin deposits, respectively, from December 1983 to December 1989 and from May 1983 to April 1985. During the course of mining operations, surveys were performed by employees of Barker and Associates Land Surveyors, Inc. ("Barker") for purposes of determining the amount of kaolin removed. The reports on all Barker surveys done for defendant were signed and approved by a registered, certified surveyor.[1] These reports informed defendant of the amount of kaolin on which it was required to pay royalties. Defendant paid plaintiffs royalties according to the method and schedule set forth in the leases.

Plaintiffs sued defendant after all mining operations had ceased, alleging three counts in the complaint. Counts one and three are the same—both seek an accounting for royalties allegedly due and for waste by defendant—and differ only in that each pertains to a different lease. Count two pertains only to the E.P. Wood lease and alleges trespass and deprivation of lateral support. Defendant has moved for summary judgment on all counts.

## II. SUMMARY JUDGMENT

■■■ Federal Rule of Civil Procedure ("FED.R.CIV.P.") 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is [1] no genuine issue as to any material fact and that [2] the moving party is entitled to judgment as a matter of law." The movant bears the initial burden of asserting the basis for his motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant is not required to negate his opponent's claim, but may instead discharge this burden by showing the district court "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. Once the movant has properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in FED.R.CIV.P. 56(c), "genuine" issues of "material" fact necessitating a trial. *Id.* at 324, 106 S.Ct. at 2553. Should the nonmoving party fail "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552.

■■■ To determine which facts are "material," the court refers to the substantive law that controls the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a question of fact to be "genuine," the party opposing summary judgment " 'must do more than simply show that there is some *metaphysical doubt* as to the material facts.' " *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). The evidence must be of such a quality that "a reasonable jury could return a

1. Until the time of his death, John Barker, Sr., who was a registered and certified surveyor, owned and operated Barker and Associates Land Surveyors and would sign and approve the surveys. Because John Barker, Sr. was the only registered, certified surveyor on staff at Barker and Associates, his death left the company without a registered surveyor for several days, until John Smithwick approached John Barker, Jr. with an offer to sign off on work done by Barker and Associates after having reviewed the same. Mr. Smithwick acted in this capacity from the time of John Barker, Sr.'s death until 1986, when John Barker, Jr. became a registered, certified surveyor. .

verdict for the nonmoving party. * * * If the evidence is merely colorable, or is not *significantly probative,* summary judgment may be granted." *Anderson,* 477 U.S. at 248, 249–50, 106 S.Ct. at 2510 & 2511 (emphasis supplied). Only those doubts about facts that are *reasonable* must be resolved in favor of the nonmovant. *Irby,* 44 F.3d at 953 (citing *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990)).

## III. DISCUSSION

### A. Counts I and III

■ Counts I and III seek an accounting to determine the amount (if any) of kaolin mined from the property on which royalties were not paid and the amount (if any) of kaolin that was "wasted," due either to commingling or to the fact that it was left unmined. As an initial matter, Counts I and III both allege that under the respective leases "a relationship was created between plaintiffs and defendant under which defendant became so situated as to exercise a controlling influence over the interest of plaintiffs, giving rise to a confidential relationship between plaintiffs and defendants which imposed upon defendant the requirements of the utmost good faith." *See* Complaint, ¶¶ 4 and 32. As the court interprets it, plaintiffs contend that this "duty" causes defendant to shoulder the burden of proof for purposes of summary judgment analysis under *Celotex* and *Anderson.*

Whatever may be the burden shifting effect of a confidential relationship *vis-à-vis* an accounting claim, the question is academic since the undisputed facts show that no confidential relationship existed. By definition,

[a]ny relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exer-

cise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

O.C.G.A. § 23–2–58 (1982). Interpreting this definition, Georgia courts have stated: "The vendor and vendee of property are not, by virtue of such fact, placed in a confidential relationship to each other, but on the contrary *are presumed to be dealing at arm's length.*" *Butts v. Southern Clays, Inc.,* 215 Ga.App. 110, 450 S.E.2d 244, 247 (1994). *See also Garbutt v. Southern Clays, Inc.,* 894 F.Supp. 456, 461–62 (M.D.Ga.1995). Plaintiffs have not produced any significantly probative evidence [2] that the leases were intended to (or did) place the parties in a confidential relationship, and the presumption remains that these agreements were entered at arm's length between persons on equal footing.

■ That having been said, it is plaintiff's burden when seeking an accounting to introduce "evidence that would allow the factfinder to determine the amount owed." *Therrell v. Georgia Marble Holdings Corp.,* 960 F.2d 1555, 1565 (11th Cir.1992). Thus,

"[i]n a proceeding to obtain an accounting the complainant is not obliged to show how much is due. But the law will not do a vain thing, and order an accounting, when the petitioner does not aver facts sufficient to indicate that something will be found to be due to him by the defendant."

*Id.* (quoting *Bowman v. Chapman,* 179 Ga. 49, 175 S.E. 241, 241 (1934)). However, as noted in *Therrell,* this statement of the law was made in the context of the old demurrer practice. Under the modern directed verdict standard, a plaintiff must "do more than prove that something is owed them; [a plaintiff] must give the factfinder sufficient infor-

---

**2.** Plaintiffs have argued that paragraph 6 of the E.P. Wood lease and the Norwood lease operate to create a confidential relationship. Looking to those lease provisions, the court finds nothing therein to support a finding of a "confidential relationship." As defendant points out, the lease

terms provided plaintiffs the right to enter upon the lands during mining for the purpose of ensuring compliance with lease terms. This is fully consistent with an "arm's length bargain" and contradicts plaintiffs' characterization of the lease provisions.

mation to determine the amount owed without speculation or guesswork." *Id.* at 1566. Therefore, to survive a properly supported motion for summary judgment[3] on an accounting claim, a plaintiff must adduce "significantly probative evidence" (1) that he is in fact owed something, and (2) that there is information sufficient to allow a factfinder to determine the amount owed without speculation or guesswork.

### 1. Whether Something Was Owed to Plaintiffs

■ Plaintiffs argue that significantly probative evidence of (a) the surveys' inaccuracy or invalidity, and of (b) defendants' waste of valuable kaolin through commingling or failure to mine demonstrates they are in fact owed something.

### a. Validity and Credibility of Barker and Associates' Surveys

Plaintiffs attack the surveys on the following bases: that the survey field measurements from which the survey reports were prepared were not performed by a registered, certified surveyor; that Barker was not independent of defendant; that the surveys were simply inaccurate or improperly performed; that certain surveys were not performed until after backfilling of a pit had begun; that some surveys were done on twenty-five (rather than fifty) foot intervals; or that some semi-annual surveys were not conducted on the exact dates as required by contract, but instead a few days thereafter.

These allegations are wholly unsupported by probative evidence. On the other hand, defendant has properly supported its summary judgment motion with probative evidence—numerous affidavits and citation to depositions showing that the surveys were valid, credible, and performed in accordance with accepted surveying standards. Defendant has further shown the lack of any evidence to support plaintiffs' charges. Despite five years of discovery and at least thirty-five (35) depositions, plaintiff has not produced one witness who said that the surveys were incorrect; that the methodology used was dubious; that it was negligent under prevailing industry practices to have persons who were not registered, certified surveyors taking the measurements that were later used to prepare a survey report signed off on by a registered, certified surveyor; that surveys done on twenty-five foot intervals are less accurate than those done on fifty foot intervals; that beginning a survey after backfilling lessens credibility; or that waiting several days for weather to improve on or around January 1 and July 1 of each year prejudiced the validity of the surveys.

Instead, plaintiffs' counsel summarily argues that "The cross section surveys made for [defendant] were not accurate," and cites the following as a "record citation" in support of this conclusion:

> Comparison of elevations of tops and bottoms of kaolin deemed usable by Defendant from analysis of drill hole data as shown by its Black Books, Bates Nos. 050928–29 with the elevations of the tops and bottoms of the pits reported from surveys as shown in P–81 (Cross Section Drawings) P–55, P–82 and P–86 (Surveyor's Field Notes).

Plaintiffs' Proposed Order, at p. 10. This "comparison" was prepared by plaintiffs' counsel. Plaintiffs also suggest that (1) consideration of the initial reserve estimates of usable kaolin (and subsequent amendments thereto) demonstrates under-reporting by the Barker surveys, and (2) since "the area mined was 27 acres . . . and the top stratum of the Wood Place averaged 10 feet of usable, mineable kaolin[, t]his indicates 435,600 c.y. of usable, mineable clay was mined, 70,492.47 c.y. more than that on which royalties were paid." Plaintiffs' Brief Opposing Summary Judgment, at 24.

---

**3.** Although *Therrell* was decided in the context of a motion for directed verdict, "the standard for summary judgment is the same as that for a directed verdict. . . ." *Morisky v. Broward Coun-* ty, 80 F.3d 445, 447 (11th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

Again, plaintiffs have not produced a witness (expert or otherwise) who analyzed the above-referenced data and drew a conclusion similar to that argumentatively urged by plaintiffs' counsel. A comparison of defendant's survey books by plaintiffs' counsel is merely an argument that does not qualify as "significantly probative evidence." Defendant has adduced substantial credible evidence contradicting plaintiffs' characterization of the initial reserve estimates, and has further shown a total lack of evidence by plaintiffs in support thereof. Lastly, plaintiffs' counsel's own calculations (27 acres times an average kaolin bed of ten foot depth) are of no probative value whatsoever, and do not constitute "significantly probative evidence" of the amount of kaolin that was or should have been removed from the property.

This case involves technical and complex issues relating to surveying. The court cannot accept plaintiffs' counsel's argumentative calculations and comparisons as "evidence" of how and why Barker's survey reports were inaccurate or unreliable. Probative evidence is required but none has been produced. Plaintiffs have not created a genuine issue of material fact regarding the surveys' validity and credibility.

Plaintiffs have also failed to create a genuine issue of material fact that Barker was not independent. Defendant showed that Barker performed survey work for other kaolin companies, and that defendant uses survey firms other than Barker at its mining sites. In response, plaintiffs have cited the court to excerpts from four depositions: Thompson, Howell, Brooks, and Daniel. The first three are employed by defendant, and the fourth by Barker.

The first three depositions show only that defendant merely directed Barker as to when and where the next survey needed to be done. Defendant (as mine operator) would decide at what point extraction of valuable kaolin would begin. It would at this point tell Barker to conduct a survey. Likewise, defendant would decide when all valuable kaolin had been extracted, and at that time would direct Barker to conduct another survey. Generally speaking, a comparison of these two surveys let defendant know how much kaolin to pay royalties on. The nature of the relationship between mine operator and surveyor made this type of interaction necessary. As Barker and its employees were not in the kaolin mining business, they did not know when to begin a survey for purposes of determining how much valuable kaolin would be removed. Like Nick Daniel deposed, it was not for him to decide where good clay began and ended, but merely to conduct survey work. When he did a survey, however, the record is clear that defendant did not "tell [him] how to do it." Daniel depo., at 14.

What plaintiff claims to have been "control" was merely incidental to the nature of the relationship between surveyor and mine operator. Plaintiffs have failed to adduce any significantly probative evidence that Barker was not "independent" as required by the lease.

### b. Commingling, Failure to Extract

Plaintiffs also allege that there is a genuine issue of material fact whether defendant committed waste by either (1) commingling valuable kaolin with overburden or (2) failing to mine valuable kaolin. Again, defendant has properly supported its motion for summary judgment on this ground by filing affidavits and directing the court to deposition citations, and by further showing the lack of any evidence to support plaintiffs' contentions. Plaintiffs have not directed the court to any evidence, expert or otherwise, to support their contention that waste was committed.

During oral argument on defendant's motion, the court referred plaintiffs' counsel to *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and said that since defendant had properly supported its summary judgment motion, the burden was on plaintiff to create a genuine issue of material fact. In response, plaintiffs' counsel offered no evidence to contradict the expla-

nation set forth in the affidavits and deposition citations offered by defendant. Counsel argued instead about what his comparison of the Black Book figures showed and how the initial reserve estimates suggested under-reporting by the Barker surveys. For the same reasons set forth *supra*, these contentions lack any evidentiary weight. Plaintiffs have not created an issue of fact.

### 2. Whether Sufficient Evidence Exists for a Factfinder to Determine the Amount Owed Without Guesswork or Speculation

Assuming *arguendo* that plaintiffs have discharged their burden as to the first element, they have nevertheless failed to carry their burden as to the second element of their claim—provide the factfinder a rational basis for the calculation of the amount owed without speculation or guesswork. In their brief opposing summary judgment, plaintiffs suggest two rational bases on which a jury might make a damages computation without speculation or guesswork. First, plaintiffs allege that the initial reserve estimates of usable kaolin (and as subsequently amended) demonstrate that the amount on which royalties were paid is less than the amount of kaolin estimated to have been in the ground. Second, plaintiffs state as follows: "[T]he area mined was 27 acres ... and the top stratum of the Wood Place averaged 10 feet of usable, mineable kaolin. This indicates 435,600 c.y. of usable, mineable clay was mined, 70,492.47 c.y. more than that on which royalties were paid." Plaintiffs' Brief Opposing Summary Judgment, at 24.

For the reasons discussed *supra*, plaintiffs have not created an issue of fact regarding this element of their claim.

### B. Count II

 Count two alleges that defendant trespassed on a twenty foot strip of land between the survey line and the property line on the E.P. Wood tract. *See* Complaint, exh. B. Under the terms of the E.P. Wood lease, defendant was to designate, on an instrument in proper form to be recorded in the land records, "not more than sixty (60) acres of said land ... to remain subject to this contract and releasing all of the remainder." Complaint, exh. A. The plat making this designation was attached to an indenture executed and recorded by the parties. *See* Defendant's SJM, exh. B. On this plat, the survey line for the eastern border of the designated area is marked with a light line approximately twenty feet to the west of the eastern property line. Plaintiffs claim that this twenty foot strip was released by this designation, and that defendant's mining activities thereon constitute a trespass.

 "In order to maintain an action of trespass as to a tract of land, it is necessary for the plaintiff to show title in himself...." *Smith v. Forrester*, 156 Ga.App. 79, 274 S.E.2d 101, 102 (1980). A plaintiff does not automatically create a genuine issue of fact regarding title by showing two possible interpretations of a deed. *Young v. Faulkner*, 217 Ga.App. 321, 457 S.E.2d 584, 585 (1995). Nor do "answers, depositions or affidavits containing mere legal conclusions and allegations present ... issues of fact on a motion for summary judgment. An affidavit in contravention of a motion for summary judgment must state more than mere conclusions; it must state specific adverse facts." *Forrester*, 274 S.E.2d at 103.

Plaintiffs have not cited the court to one fact supporting their claim to ownership. *See* Plaintiffs' Brief Opposing Summary Judgment, at 4, 7; Plaintiffs' Proposed Order, at 15–17. The only factual basis for plaintiffs' argument is the survey line's location twenty feet to the west of the tract's eastern border. Mrs. Manning deposed that the basis for her belief that the twenty foot strip had been released was the location of the survey line on the plat designation and the fact that she thought in most leases a twenty foot border had to be left on both sides. Likewise, Mrs. George deposed that the survey line's location on the designation was the source of her belief that the twenty foot strip was not to be mined. Neither Mrs.

George nor Mrs. Manning were originally parties to the lease, but instead inherited their interests from E.P. Wood.

Defendant responded with the affidavit of Steve Barker who as a registered surveyor explained that the survey line was necessarily situated twenty feet from the property line because the hedgerow that ran along the eastern border of the tract physically prevented the surveyor from running his survey line directly along the property line. Plaintiffs offered nothing in rebuttal.

Defendant properly supported its summary judgment motion, and also showed a complete lack of evidence in support of plaintiffs' claim. Plaintiffs did not produce any evidence in response, and thus have failed to establish an issue of fact regarding an essential element of this claim.

### IV. CONCLUSION

For the foregoing reasons, the court finds that defendant's motion for summary judgment should be **GRANTED. LET JUDGMENT ENTER IN FAVOR OF DEFENDANT ON ALL CLAIMS.**[4]

SO ORDERED.

---

**4.** After defendant filed its summary judgment motion, which was supported in part by the Turner, Davis, Barker, Foote, Thompson, and Cunio affidavits, plaintiff filed motions objecting to each. *See* Tabs 159–164. In turn, each motion raised several objections to the court's consideration of the affidavit testimony. By separate order, the court has rejected plaintiffs' arguments concerning the affidavits. Moreover, even if the court ruled otherwise on the affidavits the result is the same.

Although the court throughout this order repeatedly states that defendant properly supported its motion for summary judgment by, *inter alia*, filing affidavits supporting its contentions, plaintiffs' case renders consideration of the affidavits superfluous. Defendant also properly supported its summary judgment motion by showing (without reference to the affidavits) a complete lack of significantly probative evidence by plaintiff as to each element on which plaintiff had the burden of proof. There is "no express or implied requirement that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to 'the affidavits, *if any* ', suggests the absence of such a requirement." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. Thus "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.*

Defendants, by reference to materials other than the affidavits in question, properly supported their summary judgment motion and showed a complete lack of significantly probative evidence by plaintiffs. Thus, even assuming a contrary ruling on the affidavits, defendant was still entitled to summary judgment.